UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | 26-MJ-022 (GMH) |
| WILLIE ENGRAM | : | |

**DEFENDANT'S OPPOSITION
TO GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

Pending before this Honorable Court is the government's request to detain Willie Engram pretrial, pursuant to 18 U.S.C. § 3142. Because there is a combination of conditions of release that would reasonably assure Mr. Engram's appearance in court and the safety of the community, the government's request should be denied. Under the circumstances of this case and given Mr. Engram's background and extensive community support, the restrictive condition of home incarceration under the Pretrial Services Agency's High Intensity Supervision Program (HISP) with electronic monitoring would be sufficient. In opposition to the government's request, Mr. Engram, through undersigned counsel, respectfully submits the following.

**Factual Background**

Mr. Engram is 82 years old, needs the assistance of a cane to walk, suffers from chronic medical conditions, and has been experiencing some cognitive decline. *See* Exhibit 1 (PDS release plan). As the government notes in its detention memorandum, Mr. Engram has serious prior criminal convictions, but these prior convictions are based on incidents that occurred between 1972 and 1983, between 43 and 53 years ago. Most recently, Mr. Engram has proven that he does very well under supervision.

After serving more than 50 years in prison, Mr. Engram was granted compassionate release. He began a five-year term of supervised release in April 2021. The world, of course,

changed significantly in 50 years. He had no home to return to in the District of Columbia, so he initially moved to temporary housing in D.C. *See* Exhibit 2 (letter from Betsy Biben). After securing the transfer of his supervision to Virginia, he was able to move to the home of his last living sibling (his sister) in King George's County. Unfortunately, his sister became ill and died a few months later. He then worked with his probation officer and Betsy Biben, the former Chief of the District of Columbia Public Defender Service's Office of Rehabilitation and Development to return to D.C., and together they secured housing for Mr. Engram through Community Connections. Both while under the supervision of the Virginia probation office and while under the supervision of the D.C. Court Services and Offender Supervision Agency (CSOSA) supervision, Mr. Engram did very well, so well that his five-year term of supervision was terminated early in June 2024.

The instant offense is alleged to have occurred on January 30, 2026. The government has charged Mr. Engram with one count of possessing a firearm (a short-barreled shotgun) after having previously been convicted of a felony offense, in violation 18 U.S.C. § 922(g). In describing the offense, the government alleges that inside his apartment building, Mr. Engram assaulted a man, who, according to testimony at a preliminary hearing in D.C. Superior Court, is in his 20s. However, this man did not call the police to report any assault or have any injuries. The man also did not live in the building and was known to harass elderly residents there. The government's description of him "just trying to deliver groceries" is not accurate and will not be supported by evidence. On the date of the alleged incident, a woman—who is, at a minimum, friends with, and may have a relationship with, the 20-something-year-old man—called the police to the building and reported that another woman told her about a man with a gun. According to the police report, the call was made approximately twenty minutes after the alleged

incident. When the police arrived, Mr. Engram saw the police outside and walked out of the building to address the police. Body-worn camera video shows him stepping outside and the police directing him to put his hands in the area and walk down the front steps, but he was unable to step down the stairs with his hands in the air. The police walked toward him and placed him under arrest. Police then spoke to the young man and the woman who lives across the hall from Mr. Engram. The young man indicated that he was "not trying to press charges." After the police found no weapon on Mr. Engram, they obtained a search warrant. The short-barreled shotgun was recovered during the execution of the warrant. According to testimony at the preliminary hearing, it was found under a pile of clothing.

      Despite the government's allegations and Mr. Engram's very old prior convictions, there are conditions of release that could reasonably assure Mr. Engram's presence in court and the safety of the community. As the attached letters demonstrate, there are many people who have come forward and are willing to support Mr. Engram if released to the community. His caregiver is willing to be a third-party custodian, as is a long-time friend. *See* Exhibit 3 (letters from proposed third-party custodians). Together, they could ensure that someone is with Mr. Engram at all times while on pretrial release. Ms. Biben also is willing to be more involved and check on Mr. Engram daily, and she will welcome Mr. Engram into a support group she organized seven years ago for people who have served more than 15 years in prison. *See* Exhibit 2. In addition, Mr. Engram has the support of many other community members, including a long-time advocate for returning citizens. *See* Exhibit 4 (letter from Roach Brown).

## Argument

      Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released

pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). Generally, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405.

Here, the government seeks detention pursuant to 18 U.S.C. §§ 3142(f)(1)(E) because the offense involves a firearm. *See* ECF 8 at 1. n. Under this provision, detention is permissible only if there are no conditions or combination of conditions that will reasonably assure the safety of the community and Mr. Engram's appearance in court. There is no rebuttable presumption that applies here, *see* 18 U.S.C. § 3142(e)(3), and the government bears the burden of proof. A review of the factors set forth in the Bail Reform Act demonstrates that the government cannot meet their burden here. The circumstances of this case, including Mr. Engram's success while under supervision between April 2021 and June 2024, his age, his health, his limited mobility, his strong community support, and the availability of home incarceration with electronic monitoring, demonstrate that an available combination of conditions can be imposed to reasonably assure the safety of the community and Mr. Engram's appearance.

**A. Nature and Circumstances of the Offense and Weight of the Evidence**

Mr. Engram is charges with possessing a firearm. According to government agents, the firearm was found inside his home. The government argues that the weight of the evidence is significant and alleges that Mr. Engram used the firearm to assault and threaten another man. The evidence will not support those claims. Mr. Engram is 82 years old and needs a cane to support himself while walking. The man, whom the government alleges was assaulted and is approximately a quarter of Mr. Engram's age, was the subject of numerous complaints regarding his activities in the building and did not call the police to report any assault, although he apparently claimed an assault occurred when the police arrived. Moreover, Mr. Engram is not charged with assault.

The findings of Judge Bates in a recent decision apply equally here where the government has not charged the purported assault, and the evidence does not support that claim:

> The nature and circumstances of the offense [of felon in possession of a firearm] do not strongly show that [a defendant] is a flight risk or a danger the community. While § 922(g)(1) involves firearms, courts have recognized that it is not a crime of violence under the BRA. *See generally*, *e.g.*, *United States v. Gloster*, 969 F. Supp. 92 (D.D.C. 1997). Additionally, the government alleges only that [the defendant] possessed—not that he used—the firearm at issue. . . . The Court acknowledges the inherent danger that a loaded firearm presents but finds that the allegations here do not weigh heavily in favor of pretrial detention.

*See United States v. Bryant*, 25-cr-097 (JDB), ECF 15 at 2 (Mr. Bryant was detained pretrial in Superior Court because of a pending murder charge but that charge was dismissed and Judge Bates upheld Mr. Bryant's release order).

As to the weight of the evidence, the government doe not correctly cites the police reports. "Multiple witnesses" did not claim to see Mr. Engram assault the alleged victim. According to police reports and preliminary hearing testimony, the man who allegedly was the victim claimed that Mr. Engram assaulted him with a brown object (not a gun) and another

5

witness alleged that she saw Mr. Engram with an object that looked like a firearm (she did not claim to see an assault). According to testimony at the preliminary hearing, the alleged victim described a prior dispute (an "ongoing feud") with Mr. Engram and described a "fight" with him at the time of the alleged assault. Neither of the government "witnesses" are credible, and the government's argument that it was Mr. Engram who was "terrorizing" others is contrary to the truth and nonsensical. Eighty-two-year-old Mr. Engram was lawfully in his apartment building; the 20-something-year-old man had no lawful purpose in the building and was the subject of numerous prior complaints.

### B. Potential Danger to Any Person or the Community

As the Court knows, the issue here is whether Mr. Engram will present a danger to the community if released and is forward-looking. *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021) (Katsas, J. concurring in part and dissenting in part) (detention turns on "specific, forward-looking assessment of whether [the defendant] currently pose[s] an unmitigable threat to public safety"). Here, the danger the government points to is possession of a firearm, arguing that the combination of the alleged possession of a firearm and purported assault makes him a danger. The government, however, is ignoring the most recent evidence of Mr. Engram's ability to abide by conditions of supervision, his excellent compliance between April 2021 and June 2024. The conditions of that supervision, of course, were not as stringent as the conditions proposed here—there was no electronic monitoring or home incarceration. Given this history, home incarceration would *reasonably* ensure that Mr. Engram would not be a danger to the community.

### C. History and Characteristics of Mr. Engram

When the police arrived at the apartment building on January 30, Mr. Engram went outside to address them. He did not—in fact could not—run from them or try to hide. He is no

flight risk.

Nor is he a danger to the community. Mr. Engram is 82 years old and the allegation that he chased and assaulted a much younger man are not true. Even if there was credible evidence that he possessed the firearm at issue—and there is no such evidence—Mr. Engram's demonstrated success on supervision between 2021 and 2024, along with his strong community support, age, lack of mobility, and failing health, strongly support a finding that there are conditions that can reasonably assure the safety of the community.

## Conclusion

For the foregoing reasons and such other reason as may be presented at the detention hearing, Mr. Engram respectfully moves this Honorable Court to deny the government's request for pretrial detention and release Mr. Engram on the condition that he participate in the HISP program with home incarceration and electronic monitoring and with third-party custodians. These conditions are sufficient to reasonably assure Mr. Engram's appearance in court and the safety of the community.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C.  20004
(202) 208-7500